64 Cal.Rptr.3d 547 (2007)
154 Cal.App.4th 164
Fiances HARRIS et al., Petitioners,
v.
The SUPERIOR COURT of Los Angeles County, Respondent;
Liberty Mutual Insurance Company et al., Real Parties in Interest.
Liberty Mutual Insurance Company et al., Petitioners,
v.
The Superior Court of Los Angeles County, Respondent;
Frances Harris et al., Real Parties in Interest.
Nos. B195121, B195370.
Court of Appeal of California, Second District, Division One.
August 16, 2007.
*549 Lerach Coughlin Stoia Geller Rudman & Robbins, Theodore J. Pintar, Steven W. Pepich and Kevin K. Green, San Diego; Cohelan & Khoury, Timothy D. Cohelan and Isam C. Khoury, San Diego; Spiro, *550 Moss, Barness & Harrison, Dennis F. Moss and Ira Spiro, Los Angeles, for Petitioners and Real Parties in Interest Frances Harris, Dwayne Garner, Marion Brenish-Smith, Steven Brickman, Kelly Gray, Adell Butler-Mitchell and Lisa McCauley.
Sheppard Mullin Richter & Hampton, Douglas R. Hart, Los Angeles, Robert J. Stumpf, San Francisco, and Geoffrey D. DeBoskey, Los Angeles; William V. Whelan and Karin Dougan Vogel, San Diego, for Petitioners and Real Parties in Interest Liberty Mutual Insurance Company, and Golden Eagle Insurance Corporation.
No appearance for Respondent.
*548 ROTHSCHILD, J.
In these original proceedings we hold that plaintiffs are not exempt from the overtime compensation requirements imposed by California law. Defendants are insurance companies. Plaintiffs are the companies' claims adjusters, who seek damages based on overtime work for which* they allege they were not properly paid. Plaintiffs' claims are governed by two different California regulations: Wage Order 4 applies to claims arising before October 1, 2000, and Wage Order 4-2001 applies to claims arising thereafter. The matter is before us on the parties' cross-petitions for writ review.
Defendants claim that the administrative exemption to the overtime compensation requirements covers the adjusters. Plaintiffs claim that they are not covered by that exemption. Their dispute turns on the relationship between the administrative exemption and a legal distinction known in the case law as the "administrative/production worker dichotomy." The meaning of that phrase will become clear in due course. For now, it suffices to say that the trial court originally certified plaintiffs' proposed class on the ground that application of the administrative/production worker dichotomy was a predominant issue and could well be dispositive with respect to the administrative exemption. Later, however, the court revisited the issue and decertified the class for all claims arising after October 1, 2000, on the ground that under Wage Order 4-2001, but not under Wage Order 4, the administrative/production worker dichotomy is neither dispositive nor a predominant issue that would justify class treatment of plaintiffs' claims.
As the trial court recognized, the only cases interpreting the administrative exemption under Wage Order 4 are Bell v. Farmers Ins. Exchange (2001) 87 Cal. App.4th 805, 105 Cal.Rptr.2d 59 (hereafter Bell II), and, to a more limited extent, Bell v. Farmers Ins. Exchange (2004) 115 Cal.App.4th 715, 9 Cal.Rptr.3d 544 (hereafter Bell III). There is no case law interpreting the administrative exemption under Wage Order 4-2001. Under Wage Order 4 as interpreted by the Bell cases, the administrative/production worker dichotomy would indeed be predominant and dispositive in cases like the one before us.
We agree with the Bell cases concerning the role of the dichotomy under Wage Order 4, and we hold that the dichotomy plays the same role under Wage Order 4-2001. On that basis, we grant plaintiffs' petition and deny defendants' petition.

BACKGROUND
These petitions arise from four coordinated class actions against Liberty Mutual Insurance Company and Golden Eagle Insurance Corporation. Plaintiffs, claims adjusters employed by defendants, allege that defendants improperly classified them as exempt from the overtime compensation requirements under California law. Plaintiffs seek to recover the unpaid overtime to which they are allegedly entitled.
*551 The trial court initially certified a class defined as "all non-management California employees classified as exempt by Liberty Mutual and Golden Eagle who were employed as claims handlers and/or performed claims-handling activities." Plaintiffs and defendants subsequently filed cross-motions for summary adjudication of defendants' affirmative defense that plaintiffs are exempt from the overtime compensation requirements. Defendants simultaneously moved, in the alternative, to decertify the class, and they later withdrew their motion for summary adjudication. On October 18, 2006, the trial court denied plaintiffs' motion for summary adjudication and partially granted defendants' decertification motion, decertifying the class with respect to all claims arising after October 1, 2000.[1]
The class certification and summary adjudication proceedings all focused on the administrative/production worker dichotomy and on the relationship between that dichotomy and the administrative exemption from California's overtime compensation requirements. As applicable here, those requirements are set forth in two regulations promulgated by the Industrial Welfare Commission (IWC): Wage Order 4, in effect at all relevant times before October 1, 2000, and Wage Order 4-2001, which succeeded Wage Order 4.[2] Both wage orders provide that "persons employed in administrative, executive, or professional capacities" are exempt from the overtime compensation requirements. (Cal.Code Regs., tit. 8, § 11040, subd. (1)(A); Wage Order 4, subd. (1)(A).)
The California regulations were not the only authority guiding the trial court's application of the administrative exemption to claims adjusters. In Bell II, supra, Division One of the First Appellate District held that, under Wage Order 4, the plaintiff claims adjusters were not exempt administrative employees of the defendant insurance exchange. (87 Cal.App.4th at p. 828, 105 Cal.Rptr.2d 59.) In reaching that conclusion, the Court of Appeal based its interpretation of Wage Order 4 on the federal regulations defining the administrative exemption to the wage and hour provisions of the Fair Labor Standards Act (29 U.S.C. § 201 et seq. [hereafter FLSA]). (87 Cal.App.4th at pp. 814-815, 105 Cal.Rptr.2d 59.) The court determined that the federal regulations distinguish "administrative" from "production" work, and that an employee whose work falls squarely on the production side of the distinction cannot be an exempt administrative employee. (Id. at pp. 820-823, 105 Cal.Rptr.2d 59.) Applying this distinctionthe administrative/production worker dichotomyto the undisputed facts concerning the members of the plaintiff class, the court in Bell II concluded that the class members in that case did work falling squarely on the production side and consequently were not exempt. (Id. at pp. 823-828, 105 Cal.Rptr.2d 59.)
*552 In the instant case, plaintiffs likewise contend that all class members do work falling squarely on the production side of the dichotomy. On the basis of that contention and the holding of Bell II, the trial court initially concluded that a common question of law or fact predominated and certified the class. At the same time, the court stated that the dichotomy might turn out not to be dispositive, so the issue of class certification might have to be revisited later.
When the court revisited the issue upon hearing the motions for summary adjudication and class decertification, it concluded that the administrative/production worker dichotomy is not dispositive concerning the administrative exemption with respect to claims arising after October 1, 2000. The court reasoned that those claims are governed by Wage Order 4-2001, which expressly incorporates certain federal regulations in effect when Wage Order 4-2001 was issued.[3] Both Bell II and a later appellate decision in the same litigation, Bell III, involved Wage Order 4 alone, so neither case bound the trial court with respect to Wage Order 4-2001. The trial court concluded that the federal regulations expressly incorporated in Wage Order 4-2001 compel the conclusion that claims adjusters can be exempt administrative employees notwithstanding the administrative/production worker dichotomy. Accordingly, the trial court concluded that class certification on the basis of the administrative/production worker dichotomy is inappropriate for claims arising after October 1, 2000. Because the court had based its earlier certification order on the dichotomy, it decertified the class for claims arising after October 1, 2000, stating that further factual inquiry will be necessary in order to determine whether those claims are at all amenable to class treatment, perhaps by means of subclasses.
The trial court recommended interlocutory review of its decision pursuant to Code of Civil Procedure section 166.1. Plaintiffs filed a petition for writ review, seeking reversal of the order partially decertifying the class and denying their motion for summary adjudication. Defendants likewise filed a writ petition, seeking to reverse the partial denial of their motion to decertify the class. We issued an order to show cause and ordered that the petitions be consolidated.

STANDARD-OF REVIEW
We review the trial court's order denying a motion for summary adjudication de novo. (Buss v. Superior Court (1997) 16 Cal.4th 35, 60, 65 Cal.Rptr.2d 366, 939 P.2d 766.) We review the trial court's rulings on class certification for abuse of discretion, but a ruling based upon a legal error constitutes an abuse of discretion. (Sav-On Drug Stores, Inc. v. Superior Court (2004) 34 Cal.4th 319, 326-327, 17 Cal.Rptr.3d 906, 96 P.3d 194; see also Horsford v. Board of Trustees of California State University (2005) 132 Cal. App.4th 359, 393, 33 Cal.Rptr.3d 644 [legal error constitutes abuse of discretion].) We review the trial court's interpretation of statutes and regulations de novo. (People ex rel. Lockyer v. Shamrock Foods Co. *553 (2000) 24 Cal.4th 415, 432, 101 Cal.Rptr.2d 200, 11 P.3d 956 [statutes]; Ramirez v. Yosemite Water Co. (1999) 20 Cal.4th 785, 794, 85 Cal.Rptr.2d 844, 978 P.2d 2 [regulations].)

DISCUSSION

I. Overview of the California and Federal Regulations
Labor Code section 1173 grants the IWC a broad mandate to regulate the working conditions of employees in California, including the setting of standards for minimum wages and maximum hours. (See Industrial Welfare Com. v. Superior Court (1980) 27 Cal.3d 690, 701-702, 166 Cal.Rptr. 331, 613 P.2d 579; see also Bell II, supra, 87 Cal.App.4th at p. 810, 105 Cal.Rptr.2d 59.) To that end, the IWC has promulgated 17 different "wage orders" applying to distinct groups of employees. (See Cal.Code Regs., tit. 8, §§ 11010-11170.) At issue in this case are Wage Order 4 and Wage Order 4-2001, which govern the wages and hours of employees in "Professional, Technical, Clerical, Mechanical, and Similar Occupations." (Cal.Code Regs., tit. 8, § 11040.) Both wage orders provide for certain exemptions from the overtime compensation requirements. The exemptions are affirmative defenses, so an employer bears the burden of proving that an employee is exempt. (Ramirez v. Yosemite Water Co., supra, 20 Cal.4th at pp. 794-795, 85 Cal. Rptr.2d 844, 978 P.2d 2.)
Wage Order 4 exempts "persons employed in administrative, executive, or professional capacities" from the overtime compensation requirements. (Wage Order 4, subd. (1)(A).) But the wage order contains no useful definition of the scope of the administrative exemption, saying only that the exemption is limited to employees "engaged in work which is primarily intellectual, managerial, or creative, and which requires exercise of discretion and independent judgment, and for which the remuneration is not less than $1150.00 per month[.]" (Wage Order 4, subd. (1)(A)(1).) Because the wage order lacks a useful definition, Bell II determined that the federal regulations concerning the administrative exemption to the FLSA should be used as a guide to interpretation of the administrative exemption under Wage Order 4. (See Bell II, supra, 87 Cal.App.4th at pp. 812-819, 105 Cal.Rptr.2d 59.) The parties do not dispute the point, and we agree with it. We therefore join Bell II in concluding that the federal regulations should guide interpretation of the administrative exemption under Wage Order 4.
Wage Order 4-2001 also exempts "persons employed in administrative, executive, or professional capacities." (Cal.Code Regs., tit. 8, § 11040, subd. (1)(A).) Unlike Wage Order 4, however, it contains a detailed definition of the administrative exemption. (See Cal.Code Regs., tit. 8, § 11040, subd. (1)(A)(2).) As relevant here, to qualify for the administrative exemption an employee must be "primarily engaged in" "office or non-manual work directly related to management policies or general business operations of his/her employer or his/her employer's customers[.["[4] (Cal.Code Regs., tit. 8, § 11040, subds. (1)(A)(2)(a)(i), (1)(A)(2)(f).) The regulation also includes a number of other requirementse.g., the employee must be paid a certain minimum salary and must *554 "customarily and regularly exercise[ ] discretion and independent judgment" (id., tit. 8, § 11040, subd. (1)(A)(2)(b))but only the requirement that the employee primarily do work that is "directly related to management policies or general business operations" is at issue here. The wage order further provides that "[t]he activities constituting exempt work and non-exempt work shall be construed in the same manner as such terms are construed in the following regulations under the Fair Labor Standards Act effective as of the date of this order: 29 C.F.R. Sections 541.201-205, 541.207-208, 541.210, and 541.215." (Cal.Code Regs., tit. 8, § 11040, subd. (1)(A)(2)(f).)
Wage Order 4-2001's definition of the administrative exemption closely parallels the federal regulatory definition of the same exemption. Under the FLSA, "any employee employed in a bona fide executive, administrative, or professional capacity" is exempt from the statute's minimum wage and maximum hour requirements, and thus from the concomitant overtime compensation requirements. (29 U.S.C. § 213, subd. (a)(1).) The FLSA delegates to the federal Department of Labor (DOL) the authority to "define[ ] and delimit[ ]" the scope of those exemptions. (Ibid.)
The regulatory definition of the federal administrative exemption appears at 29 C.F.R. § 541.2. The regulation provides, similarly to Wage Order 4-2001, that a person employed in a bona fide administrative capacity is an employee whose "primary duty" consists of "[t]he performance of office or nonmanual work directly related to management policies or general business operations of his employer or his employer's customers[.]" (29 C.F.R. § 541.2(a)(1).) Like Wage Order 4-2001, the federal regulation also includes a number of other requirementssuch as a minimum salary and the exercise of discretion and independent judgmentbut, again, only the requirement that the employee's primary duty be "directly related to management policies or general business operations" is at issue here.
In addition to regulations defining the administrative and other exemptions, the DOL promulgated interpretive regulations explaining the terminology used in the regulatory definitions. (See generally 29 C.F.R. §§ 541.99-541.602.) An entire section, 29 C.F.R. § 541.205, is devoted to explaining the import of "directly related to management policies or general business operations." That regulation is incorporated into Wage Order 4-2001. (Cal. Code Regs., tit. 8, § 11040, subd. (1)(A)(2)(f).) It provides at the outset that: "The phrase `directly related to management policies or general business operations of his employer or his employer's customers' describes those types of activities relating to the administrative operations of a business as distinguished from 'production' or, in a retail or service establishment, 'sales' work. In addition to describing the types of activities, the phrase limits the exemption to persons who perform work of substantial importance to the management or operation of the business of his employer or his employer's customers." (29 C.F.R. § 541.205(a).) Thus, the regulatory language "directly related to management policies or general business operations" encompasses two distinct requirements: (1) The work must be of a particular type (i.e., administrative, as opposed to production, work), and (2) the work must be of substantial importance to the management or operation of the business. For an employee to be exempt, the employee's primary duty must meet both of those requirements.
The remaining subsections of 29 C.F.R. § 541.205 give further interpretive guidance concerning both of the requirements *555 contained in the "directly related" language. The subsection concerning the type of work explains that "[t]he administrative operations of the business include the work performed by so-called white-collar employees engaged in `servicing' a business as, for[ ] example, advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control." (29 C.F.R. § 541.205(b).)
Another subsection focuses on the substantial importance requirement and explains that work of substantial importance "is not limited to persons who participate in the formulation of management policies or in the operation of the business as a whole." (29 C.F.R. § 541.205(c).) Rather, work of substantial importance can be performed by employees whose "work affects policy or whose responsibility it is to execute or carry it out." (Ibid.) The same subsection illustrates the substantial importance requirement by giving numerous examples of employees who do or do not meet the requirement. (See, e.g., 29 C.F.R. § 541.205(c)(2) ["[a] messenger boy who is entrusted with carrying large sums of money or securities" and "[a]n employee operating very expensive equipment" are nonetheless not doing work of substantial importance].)
Because the substantial importance requirement derives from the phrase "directly related to management policies or general business operations," the subsection concerning the substantial importance requirement often uses the "substantial importance" language and the "directly related" language interchangeably. The following passage illustrates the pattern: "It is not possible to lay down specific rules that will indicate the precise point at which work becomes of substantial importance to the management or operation of a business. It should be clear that the cashier of a bank performs work at a responsible level and may therefore be said to be performing work directly related to management policies or general business operations [i.e., work of substantial importance]. On the other hand, the bank teller does not. Likewise, it is clear that bookkeepers, secretaries, and clerks of various kinds hold the run-of-the-mine positions in any ordinary business and are not performing work directly related to management policies or general business operations [i.e., work of substantial importance]. On the other hand, a tax consultant employed either by an individual company or by a firm of consultants is ordinarily doing work of substantial importance to the management or operation of a business [i.e., work that meets the "substantial importance" component of the "directly related" requirement]." (29 C.F.R. § 541.205(c)(1).)
The subsection concerning the substantial importance requirement continues: "The test of `directly related to management policies or general business operations' is also met by many persons employed as advisory specialists and consultants of various kinds, credit managers, safety directors, claim agents and adjusters, wage-rate analysts, tax experts, account executives of advertising agencies, customers' brokers in stock exchange firms, promotion men, and many others." (29 C.F.R. § 541.205(c)(5), italics added.)
One other federal regulation is relevant to our analysis. Under the FLSA, employees whose duties "necessitate irregular hours of work" may enter contracts with their employers guaranteeing constant pay for varying workweeks that might otherwise violate the maximum hour requirements of the statute. (29 U.S.C. § 207, subd. (f).) That provision of the FLSA applies only to nonexempt employees, because *556 it expressly refers to "the maximum workweek applicable to such employee under" the FLSA. (Ibid.) The federal regulations promulgated under the statute list "insurance adjusters" as employees "whose duties may necessitate irregular hours of work[,]" and who are therefore eligible to enter into the varying-workweek contracts permitted by the FLSA. (29 C.F.R. § 778.405.) The implication is that insurance adjusters are not exempt employeesotherwise, the provision concerning varying-workweek contracts would have nothing to do with them.
To summarize: (1) Wage Order 4 contains no useful definition of its administrative exemption, so the federal regulations should be used as a guide; (2) Wage Order 4-2001 requires that exempt administrative employees be "primarily engaged in" "office or non-manual work" that is "directly related to management policies or general business operations;" (3) the federal regulations likewise define the administrative exemption in terms of "office or non-manual work" that is "directly related to management policies or general business operations;" (4) the federal regulations interpret the "directly related" language as encompassing two requirements, i.e., that the work be of the proper type (administrative, as opposed to production, work) and that the work be of "substantial importance;" and (5) Wage Order 4-2001 expressly incorporates the federal interpretive regulations.
Because the federal regulations must be used as a guide to interpreting Wage Order 4, and because Wage Order 4-2001 expressly incorporates the federal regulations, we agree with the parties that the analysis of the administrative exemption should be the same under both wage orders. (See Eicher v. Advanced Business Integrators, Inc. (2007) 151 Cal.App.4th 1363, 1371-1373, 61 Cal.Rptr.3d 114 [applying Bell's Wage Order 4 analysis to a claim governed by Wage Order 4-2001].)

II. The Administrative/Production Worker Dichotomy
To qualify for the administrative exemption under either wage order, an employee must be primarily engaged in work of a type that is "directly related to management policies or general business operations." That requirement obviously stands in need of interpretation. In one sense, every type of work directly relates to management policy, because every employee does work that carries out, or is governed by, management policy. California's wage and hour regulations, however, are liberally construed in furtherance of their remedial purpose, and exemptions to the regulations are therefore narrowly construed. (Ramirez v. Yosemite Water Co., supra, 20 Cal.4th at p. 794, 85 Cal. Rptr.2d 844, 978 P.2d 2.) The same interpretive principles apply to the FLSA and its exemptions. (See, e.g., Klem v. County of Santa Clara, California (9th Cir.2000) 208 F.3d 1085, 1089.) Any interpretation that would mean all types of work meet the "directly related" requirement is consequently untenable.
The federal regulations provide that work is "directly related to management policies or general business operations" only if it "relat[es] to the administrative operations of a business as distinguished from `production' or, in a retail or service establishment, `sales' work" (29 C.F.R. § 541.205(a)), but that statement itself is not pellucid. We take it to mean that only work performed at the level of policy or general operations can qualify as "directly related to management policies or general business operations." In contrast, work that merely carries out the particular, day-to-day operations of the business is production, *557 not administrative, work. That is the administrative/production worker dichotomy, properly understood.[5] (See Eicher v. Advanced Business Integrators, Inc., supra, 151 Cal.App.4th at p. 1373, 61 Cal.Rptr.3d 114 [an employee who is "engaged in the core day-to-day business" of the employer is doing production work].)
We are aware of no other plausible interpretation of the "directly related" requirement as it relates to the type of work performed (as opposed to substantial importance), and our interpretation finds support in both Bell II and the federal case law. (See, e.g., Bell II, supra, 87 Cal.App.4th at pp. 821-823, 105 Cal. Rptr.2d 59.) An employee doing exempt administrative work is "engage[d] in `running the business itself or determining its overall course or policies,' not just in the day-to-day carrying out of the business' affairs." (Bothell v. Phase Metrics, Inc. (9th Cir.2002) 299 F.3d 1120, 1125, quoting Bratt v. County of Los Angeles (9th Cir. 1990) 912 F.2d 1066,1070.) "[T]he essence of this requirement" is that exempt administrative work is limited to "`the running of a business, and not merely ... the day-to-day carrying out of its affairs.'" (Bratt v. County of Los Angeles, supra, 912 F.2d at p. 1070; see also Martin v. Cooper Elec. Supply Co. (3d Cir.1991) 940 F.2d 896, 904-905 [plaintiffs' work of promoting sales did not fall on the administrative side of the dichotomy, because it "focused simply on particular sales transactions" rather than on increasing "customer sales generally "]; Reich v. American Intern. Adjustment Co., Inc. (D.Conn.1994) 902 F.Supp. 321, 325 [automobile damage appraisers fall on the production side of the dichotomy because "[r]ather than administratively running the business, they carry out the daily affairs of their employer].)
We recognize that the administrative/production worker dichotomy is a somewhat rough distinction that may be difficult to apply in certain cases. But, as defendants concede, the dichotomy is determinative for any employees whose "work falls `squarely on the "production" side of the line[.]'" (Bothell v. Phase Metrics, Inc., supra, 299 F.3d at p. 1127.) Doing administrative, as opposed to production, work is one of the two requirements imposed by the phrase "directly related to management policies or general business operations." (29 C.F.R. § 541.205(a).) An employee who is primarily (i.e., more than half of his or her work time (Cal.Code Regs., tit. 8, § 11040, subd. (2)(N))) engaged in production, not administrative, work therefore is not primarily engaged in work that is "directly related to management policies or general business operations." Such an employee thus cannot be an exempt administrative employee.

III. Application of the Dichotomy
The undisputed facts show that plaintiffs are primarily engaged in work that falls on the production side of the dichotomy, namely, the day-to-day tasks involved in adjusting individual claims. They investigate and estimate claims, make coverage determinations, set reserves, negotiate settlements, make settlement recommendations for claims beyond their settlement authority, identify potential fraud, and so forth. None of that work is carried on at the level of management policy or general operations. Rather, it is *558 all part of the day-to-day operation of defendants' business.
Our conclusion is supported by Bell II, in which the plaintiffs spent the "bulk of their time" "`investigating and estimating claims, communicating with policy holders and third party claimants about the indemnity value of the claim, filling out numerous forms, performing various other clerical work, such as photocopying and matching mail to files, and with respect to field claims representatives, driving.'" (Bell II, supra, 87 Cal.App.4th at pp. 825-826, 105 Cal.Rptr.2d 59.) The plaintiffs in Bell II also performed the following "additional duties": "`determining liability, setting and/or recommending reserves, recommending coverage, estimating damage or loss, providing risk advice, identifying subrogation rights, detecting potential fraud, determining whether reservation of rights letters should be sent, and representing the company at mediations, arbitrations and settlement conferences...."' (Id. at p. 825, 105 Cal.Rptr.2d 59.) The Court of Appeal concluded that such work falls "squarely on the production side of the administrative/production worker dichotomy," that the plaintiffs were "fully engaged in performing the day-to-day activities" of the claims-adjusting component of their employer's business, and that they consequently were not exempt administrative employees. (Id at p. 826, 105 Cal. Rptr.2d 59.)
The trial court in this case likewise stated that "under the administrative/production dichotomy set forth in [Bell II and Bell III ], most employees performing the functions of claims adjusters in an insurance company would be non[ ]exempt." The court further observed that it is undisputed that "[w]ith minor exceptions, the duties of the claims representative plaintiffs in Bell II and Bell III match those of at least most of the members of the class in this case."[6]
We acknowledge, however, that defendants did introduce evidence that some plaintiffs might do some work at the level of policy or general operations. A declaration from a Golden Eagle vice president states that "Golden Eagle's Underwriters may consult with Golden Eagle's claims examiners regarding whether the Company should issue certain types of policies." A declaration from another Golden Eagle employee states that "[o]ne of our [special investigations unit] Investigators was on a committee to develop an integrated [special investigations unit] Task force that is shaping the policies and procedures of Golden Eagle." Another Golden Eagle employee's declaration states that "[t]he claims examiners also serve on various committees that determine how to better run our business."
The work described in the foregoing quotations might well fall on the administrative side of the dichotomy.[7] But it is *559 still insufficient to carry defendants' burden in opposition to plaintiffs' motion for summary adjudication because no evidence shows that even a single plaintiff primarily engages in such work. (See Cal.Code Regs., tit. 8, § 11040, subd. (2)(N) [defining "primarily" to mean "more than one-half the employee's work time"].) Rather, these few examples of potentially administrative work are dwarfed by the mountain of evidence, introduced by defendants themselves, that plaintiffs are primarily engaged in the day-to-day tasks of adjusting individual claims, such as investigating, making coverage determinations, setting reserves, and negotiating settlements. The isolated references to work at the level of policy or general operations thus appear to be the "minor exceptions" to which the trial court referred when it concluded that, subject to those exceptions, plaintiffs' work falls on the production side of the dichotomy.
The undisputed facts show that plaintiffs are primarily engaged in work that falls squarely on the production side of the administrative/production worker dichotomy. Plaintiffs therefore are not primarily engaged in work that is "directly related to management policies or general business operations." Accordingly, plaintiffs cannot be exempt administrative employees under either Wage Order 4 or Wage Order 4-2001.
Defendants' arguments to the contrary are not persuasive. First, defendants draw our attention to the following language in 29 C.F.R. § 541.205(b): "The administrative operations of the business include the work performed by so-called white-collar employees engaged in `servicing' a business as, for[ ] example, advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control." Defendants then argue that plaintiffs advise management, plan, negotiate, and represent the company. For example, plaintiffs advise management "by making recommendations to their supervisors about the settlement of claims in excess of their authority." They also advise management about "whether an attorney or an outside investigator [is] needed, as well as whether there [are] any potential subrogation or fraud issues." Plaintiffs are responsible for planning "the processing of a claim from beginning to end[.]" "They negotiate with claimants or their attorneys to settle claims." And they represent the company when they settle claims, thereby binding their employers to the terms of the settlements. Defendants conclude that, because plaintiffs perform the kinds of work listed in 29 C.F.R. § 541.205(b), they must be doing exempt administrative work.
Defendants' argument fails because not all activities that involve advising management, planning, negotiating, and representing the company constitute exempt administrative work. Rather, in order for the listed tasks to fall on the administrative side of the dichotomy, they must be carried on at the level of policy or general operations. For example, Martin v. Cooper Eke. Supply Co., supra, 940 F.2d at pages 904-905, held that although wholesale salespersons negotiated prices and terms, represented the company, and purchased non-inventory products that customers requested, none of those activities *560 constituted administrative work. Rather, they were "only routine aspects of sales production within the context of the employer's wholesaling business. (Id. at p. 905.) Similarly, although advising management about the formulation of policy is exempt administrative work, advising management about the settlement of an individual claim is not. (See Bratt v. County of Los Angeles, supra, 912 F.2d at p. 1070 [as used in 29 C.F.R. § 541.205(b), "advising the management" refers to "advice on matters that involve policy determinations, i.e., how a business should be run or run more efficiently"].) Plaintiffs' planning, negotiating, and representing are likewise not carried on at the level of policy or general operations. They are all part of the day-to-day business of processing individual claims. They are production work.
Second, defendants argue that plaintiffs do not produce defendants' product, because defendants' product is the transference of risk, not claims adjusting. The argument fails for two reasons. First, as defendants' own evidence shows, adjusting claims is an important and essential part of transferring risk. If defendants never paid any claims, they would not be transferring any risk; they would just be transferring their customers' premium payments to themselves. But defendants cannot pay any claims without first adjusting those claims, e.g., making coverage determinations, assessing the value of the covered portions of claims, and paying the covered amount. Thus, by adjusting claims, plaintiffs directly engage in transferring risk. It is unsurprising, then, that the declaration of one of Liberty Mutual's own executives states that (1) "Liberty Mutual's principal function is the acceptance of risks transferred to it by others[,]" and (2) "[t]hat task is accomplished in a number of ways, including but not limited to ... claims adjustment...." Consequently, assuming the truth of defendants ' contention that their product is the transference of risk, we still conclude that plaintiffs' work of adjusting claims constitutes production work.
Defendants' argument also fails for a second, independent reason, namely, that producing the employer's product is not a necessary condition for doing production, as opposed to administrative, work. If it were, then the work of every office worker employed by a manufacturing enterprise would fall on the administrative side of the dichotomy. That result, however, would violate the rule that the exemptions must be narrowly construed. (Ramirez v. Yosemite Water Co., supra, 20 Cal.4th at p. 794, 85 Cal.Rptr.2d 844, 978 P.2d 2; Klem v. County of Santa Clara, California, supra, 208 F.3d at p. 1089.) The point of the dichotomy has always been to distinguish between kinds of office or nonmanual work, not to classify all office work as administrative. (Cf. Martin v. Cooper Elec. Supply Co., supra, 940 F.2d at pp. 903-904 ["[T]he concept of 'production' ... is not limited to manufacturing activities."].)
Moreover, this pointthat producing the employer's product is not a necessary condition for doing nonexempt production workapplies with equal force to nonmanufacturing enterprises. For example, a law firm's product is legal advice and legal representation, not secretarial services. A secretary at a law firm therefore does not produce the firm's product; indeed, to do so would be to engage in the unauthorized practice of law, assuming the secretary is not a member of the bar. But the work of the secretary is paradigmatically nonexempt production work. It has nothing to do with policy or general operations (except in the sense that, like every employee's work, it is governed by policy). *561 Rather, it relates entirely to the day-to-day carrying on of the firm's affairs.[8]
Thus, because producing the employer's product is not a necessary condition for doing production, as opposed to administrative, work, defendants' argument would fail even if defendants were right that plaintiffs do not produce defendants' product. That is, even if plaintiffs did not produce defendants' product, it would not follow that plaintiffs are doing administrative work.[9]

IV. The Effect of 29 C.F.R. § 541.205(c)(5)
Defendants argue that they should prevail under 29 C.F.R. § 541.205(c)(5), which provides that "[t]he test of `directly related to management policies or general business operations' is also met by many persons employed as advisory specialists and consultants of various kinds, credit managers, safety directors, claim agents and adjusters, ... and many others." (Italics added.) According to defendants, the specific reference to claims agents and adjusters controls over the more general language concerning the administrative/production worker dichotomy in 29 C.F.R. § 541.205(a). Defendants conclude that class certification and summary adjudication on the basis of the dichotomy is *562 therefore improper. The trial court agreed, but we do not.
First, the plain language of the regulation shows that defendants' argument is unsound. The regulation states only that "many persons employed as ... claim agents and adjusters" do work that meets the "directly related" requirement. (29 C.F.R. § 541.205(c)(5), italics added.) It may well be true that many persons so employed do meet the requirement, or that many did when the regulation was enacted in 1949. (See 14 Fed.Reg. 7730-7745 (Dec. 27, 1949).) But there is no evidence in the instant case that a single member of the class originally certified by the trial court is primarily engaged in administrative, as opposed to production, work, so there is no evidence that any of them meet the "directly related" requirement. The regulatory reference to "many persons" cannot substitute for evidence that the plaintiffs before us actually do the required amount of the required type of work. The only reasonable inference from the evidentiary record before us is that plaintiffs are not among the "many persons" to whom the regulation refers.
Second, defendants' argument that the specific reference to "claim agents and adjusters" in 29 C.F.R. § 541.205(C)(5) controls over the general administrative/production worker dichotomy in 29 C.F.R. § 541.205(a) fails as well, because another regulation (29 C.F.R. § 778.405) promulgated under the FLSA specifically refers to "insurance adjusters" and implies that they ordinarily are not exempt. As we explained in Part I, ante, under the FLSA, employees whose duties "necessitate irregular hours of work" may enter contracts with their employers guaranteeing constant pay for varying workweeks that might otherwise violate the maximum hour requirements of the statute. (29 U.S.C. § 207, subd. (f).) That provision of the FLSA applies only to nonexempt employees, because it expressly refers to "the maximum workweek applicable to such employee under" the FLSA. (Ibid.) The regulations promulgated under the statute list "insurance adjusters" as employees "whose duties may necessitate irregular hours of work," and who are therefore eligible to enter into the-varying-workweek contracts permitted by the FLSA. (29 C.F.R. § 778.405.) It follows that insurance adjusters are not exemptotherwise, the provision concerning varying-workweek contracts would have nothing to do with them. And although Wage Order 4-2001 does not incorporate 29 C.F.R. § 778.405, it is still relevant to our interpretation of 29 C.F.R. § 541.205(c)(5), which Wage Order 4-2001 does incorporate.
Bell III, supra, 115 Cal.App.4th at p. 735, 9 Cal.Rptr.3d 544, explains the significance of 29 C.F.R. § 778.405 in accordance with our own view. Defendants, however, never mention Bell III's analysis of the interplay between sections 541.205(c)(5) and 778.405, nor do they present any argument to refute our (and Bell III's) analysis of that interplay. That analysis is fatal to their argument that the specific reference to "claim agents and adjusters" in 29 C.F.R. § 541.205(c)(5) should be controlling, because there is no reason why it should control over the equally specific reference to "insurance adjusters" in 29 C.F.R. § 778.405.
Third, as we also discussed in Part I, ante, 29 C.F.R. § 541.205(c) is focused exclusively on the substantial importance requirement, which is just one part of the "directly related" requirement. Regrettably, 29 C.F.R. § 541.205(c) often uses the "substantial importance" language and the "directly related" language interchangeably, but a reading of the regulation as a whole leaves little room for doubt that *563 substantial importance is its sole concern. Thus, 29 C.F.R. § 541.205(c)(5) asserts only that many persons employed as "claim agents and adjusters" (and in the other listed occupations) do work of substantial importance. That assertion is fully consistent with our conclusion that no evidence shows that the plaintiffs in this case are primarily engaged in administrative, as opposed to production, work. Plaintiffs may or may not be among the many persons who do work of substantial importance. But plaintiffs primarily do production work, so they cannot be covered by the administrative exemption.
The parties do not disagree as to plaintiffs' duties. We hold that, with the few exceptions we have noted, those duties do not fall on the administrative side of the administrative/production worker dichotomy. Plaintiffs therefore are not primarily engaged in work that is "directly related to management policies or general business operations" (29 C.F.R. § 541.205(a)), and 29 C.F.R. § 541.205(c)(5) does not undermine that conclusion. It follows that plaintiffs are not exempt administrative employees under either Wage Order 4 or Wage Order 4-2001.[10] Accordingly, plaintiffs' motion for summary adjudication should have been granted, and, because the dichotomy is a predominant common issue under both wage orders, defendants' motion for class decertification should have been denied in its entirety.

V. The Agency Opinion Letters and the Federal Case Law
Defendants urge us to defer to a 2002 opinion letter issued by the DOL, which concludes that claims adjusters are exempt administrative employees. Plaintiffs urge us instead to rely on opinion letters issued in 1998 and 2003 by the Division of Labor Standards Enforcement (DLSE), the California agency charged with enforcing IWC wage orders, which support plaintiffs' contention that they are not exempt. We decline to rely on the DOL opinion letters, but we find the DLSE letters to be well reasoned and therefore persuasive.
DOL opinion letters are "entitled to respect" only to the extent they have the "power to persuade[.]" (Skidmore v. Swift & Co. (1944) 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124; Christensen v. Harris County (2000) 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621.) Their persuasive power depends upon factors such as the extent to which they are thorough and well reasoned. (Skidmore v. Swift. & Co., supra, 323 U.S. at p. 140, 65 S.Ct. 161.) We do not find the DOL's 2002 opinion letter thorough, well-reasoned, or persuasive with respect to the controlling issues in this case. The opinion letter contains no discussion of the administrative/production worker dichotomy, although numerous other DOL opinion letters rely upon the dichotomy. (See Bell III, supra, 115 Cal.App.4th at p. 734, fn. 7, 9 Cal.Rptr.3d 544 [collecting DOL opinion letters relying on the dichotomy from 1988 to 1999].) The opinion letter cites 29 C.F.R. § 541.205(c)(5) for the proposition that claims adjusters do exempt administrative work, but the letter fails to acknowledge (1) the significance of 29 C.F.R. § 541.205(c)(5)'s "many persons" language, (2) the focus in 29 C.F.R. § 541.205(c) on substantial importance, rather than the type of work performed, and (3) the reference to "insurance adjusters" in 29 C.F.R. § 778.405. And the opinion letter further *564 reasons that claims adjusters plan, represent the company, advise management, and negotiate, but the opinion letter fails to acknowledge that those duties do not relate to policy or general operations. For all of these reasons, we do not defer to the DOL's 2002 opinion letter.[11]
Although DLSE opinion letters are "not entitled to deference and [do] not have the force of law[,]" we may rely on them to the extent we find them persuasive. {Armenia v. Osmose, Inc. (2005) 135 Cal.App.4th 314, 324, 37 Cal.Rptr.3d 460.) The DLSE's 1998 opinion letter contains well-reasoned analysis with which we agree, principally its interpretation of the administrative/production worker dichotomy in terms of the distinction between work at the level of policy or general operations and the day-to-day carrying on of the business' affairs. The DLSE's 2003 opinion letter observes that the Bell II analysis of Wage Order 4 applies with equal force to Wage Order 4-2001, a conclusion with which we also agree.
In addition, we recognize that a number of federal circuit and district court cases have concluded that claims adjusters do work that is "directly related to management policies or general business operations." We are not, however, bound by decisions of the lower federal courts on issues of federal law. (Choate v. County of Orange (2000) 86 Cal.App.4th 312, 327-328, 103 Cal.Rptr.2d 339.) We find none of the federal cases involving claims adjusters persuasive.
For example, cases relying on evidence that claims adjusters plan, advise, negotiate, and represent the company (Roe-Midgett v. CC Services, Inc., supra, 2006 WL 839443, at *14; Jastremski v. Safeco Ins. Companies, supra, 243 F.Supp.2d at p. 751; Palacio v. Progressive Ins. Co., supra, 244 F.Supp.2d at p. 1047; Blue v. The Chubb Group (N.D.Ill. July 13, 2005, No. 03 C 6692) 2005 WL 1667794, at *11) all fail to recognize that other federal cases hold that such work meets the "directly related" requirement only if it is conducted at the level of policy or general operations. (Martin v. Cooper Elec. Supply Co., supra, 940 F.2d at pp. 904-905; Bratt v. County of Los Angeles, supra, 912 F.2d at p. 1070.) We find the latter cases persuasive, and we see no reason not to apply their analysis to suits by claims adjusters.
Other cases rely on the reference to "claim agents and adjusters" in 29 C.F.R. *565 § 541.205(c)(5). (Roe-Midgett v. CC Services, Inc., supra, 2006 WL 839443, at *14; Jastremski v. Safeco Ins. Companies, supra, 243 F.Supp.2d at p. 751; Blue v. The Chubb Group, supra, 2005 WL 1667794, at *10; McLaughlin v. Nationwide Mut. Ins. Co. (D.Or. Aug. 18, 2004, No. Civ.02-6205-TC) 2004 WL 1857112, at *5; Munizza v. State Farm Mut. Auto. Ins. Co. (W.D.Wash. May 12, 1995, No. C94-5345RJB) 1995 WL 17170492, at *5, affd. (9th Cir., Nov. 7, 1996, No. 95-35794) 1996 WL 711563; Marting v. Crawford & Co., supra, 2006 WL 681060, at *5-*6; Murray v. Ohio Casualty Corp. (S.D.Ohio Sept. 27, 2005, No. 2:04-CR-539) 2005 WL 2373857, at *5-*6.) Those cases, like the DOL letters, are unpersuasive because they fail to recognize the importance of (1) the "many persons" language in 29 C.F.R. § 541.205(c)(5), (2) the focus in 29 C.F.R. § 541.205(c) on substantial importance, rather than the type of work that fits the exemption, and (3) the inclusion of "insurance adjusters" in 29 C.F.R. § 778.405.
Some cases rely upon the proposition that claims adjusters employed by insurance companies do not produce their employers' product, namely, insurance policies. (Cheatham v. Allstate Ins. Co., supra, 465 F.3d at p. 585; Palacio v. Progressive Ins. Co., supra, 244 F.Supp.2d at p. 1050; Jastremski v. Safeco Ins. Companies, supra, 243 F.Supp.2d at p. 753; McLaughlin v. Nationwide Mut. Ins. Co., supra, 2004 WL 1857112, at *5.) As we explained in Part III and footnote 9, ante, that analysis is based on the mistaken assumption that producing the employer's product is a necessary condition for doing "production" work within the meaning of 29 C.F.R. § 541.205(a). As we discussed earlier, that assumption cannot be correct, because otherwise every office worker employed by a manufacturing enterprise would be doing "administrative" work within the meaning of the regulation Such a reading of the regulation is impermissible-both the California and the federal exemptions must be narrowly construed. (Ramirez v. Yosemite Water Co., supra, 20 Cal.4th at p. 794, 85 Cal. Rptr.2d 844, 978 P.2d 2; Klem v. County of Santa Clara, California, supra, 208 F.3d at p. 1089.)
Finally, some cases omit the administrative/production worker dichotomy entirely or expressly refuse to apply it on the ground that it is an outmoded remnant of a bygone industrial age. (In re Farmers Ins. Exch. Claims Rep. Overtime Pay (D.Or.2004) 336 F.Supp.2d 1077, 1087-1088, revd. in part on other grounds sub nom. In re Farmers Insurance Exchange, supra, 481 F.3d 1119; Robinson-Smith v. Government Employees Ins. Co. (D.D.C. 2004) 323 F.Supp.2d 12, 22, fn. 6; McLaughlin v. Nationwide Mut. Ins. Co., supra, 2004 WL 1857112, at *5; see also Munizza v. State Farm Mut. Auto. Ins. Co., supra, 1995 WL 17170492, at *5-*6 [failing to apply the dichotomy but stating no basis for the omission], aff'd. (9th Cir., Nov. 7, 1996, No. 95-35794) 1996 WL 711563; Murray v. Ohio Casualty Corp., supra, 2005 WL 2373857, at *5-*6 [same].) We are aware of no reasoned basis for those courts' refusal to apply the dichotomy. In order to be covered by the administrative exemption, an employee must be primarily engaged in work that meets the "directly related" requirement. Under 29 C.F.R. § 541.205(a), the "directly related" requirement includes the requirement that the work be administrative, as opposed to production, work. We are not at liberty to ignore those regulatory requirements.[12]
*566 In sum, we conclude that the DLSE opinion letters are persuasive, but the DOL opinion letters and the federal cases involving claims adjusters are not.

VI. The Alleged Heterogeneity of the Class
Defendants present one argument we have not yet addressed. According to defendants, the administrative/production worker dichotomy cannot be dispositive, and class treatment cannot be appropriate, because the certified class is so heterogeneous. In support of this argument, defendants point out that the class includes claims adjusters "from multiple companies, three different business lines, and 39 different broad job classifications.... [D]ifferent team managers impose different limitations on what the claims adjusters they supervise may do without either obtaining approval or notifying the team manager. Some adjusters work closely with attorneys toward the resolution of claims, while others do not. The settlement authority of Liberty Mutual claims handlers also varies widely." (Citations omitted.) Defendants' argument fails because the fact that the class is heterogeneous in certain respects does not undermine our conclusion that no evidence shows that any class members primarily engage in work at the level of management policy or general operations. That conclusion disposes of defendants' affirmative defense based on the administrative exemption, and it is a predominant issue that is common to the claims of all class members.
Finally, we wish to address defendants' assertion that the question presented in these proceedings is whether "every insurance adjuster in California, without exception, from the most senior to the most junior, and regardless of the adjuster's duties" is nonexempt. (Italics added.) The assertion is mistaken.
Job titles by themselves determine nothing. (29 C.F.R. § 541.201(b)(1) ["A title alone is of little or no assistance in determining the true importance of an employee to the employer or his exempt or nonexempt status...."]; Cal.Code Regs., tit. 8, § 11040, subd. (1)(A)(2)(f) [incorporating 29 C.F.R. § 541.201 into Wage Order 4-2001].) In every case, "the exempt or nonexempt status of any particular employee must be determined on the basis of whether his duties, responsibilities, and salary meet all the requirements of the exemption at issue. (29 C.F.R. *567 § 541.201(b)(2).) Application of the administrative exemption thus requires case-specific factual analysis of the work actually performed by the particular employees involved. Reliance on a job title like "claims adjuster" is no substitute.

DISPOSITION
Plaintiffs' petition for writ of mandate (B195121) is granted. We direct the trial court to vacate its October 18, 2006 order (1) denying plaintiffs' motion for summary adjudication and (2) partially granting defendants' motion to decertify the class, and to enter a new and different order (1) granting plaintiffs' motion for summary adjudication of defendants' affirmative defense based on the administrative exemption and (2) denying in its entirety defendants' motion to decertify the class. Defendants' petition for writ of mandate (B195370) is denied. Plaintiffs shall recover their costs on both writ proceedings.
I concur: MALLANO, Acting P.J.
VOGEL, J.
I dissent.
There are two lines of cases, one supporting the majority's conclusion that claims adjusters are not exempt employees, the other supporting my view that they are exempt. Because so much has already been written on this subject, I see no need to reinvent the wheel-and will limit my comments to a brief summary of the statutory and regulatory scheme as I see it, plus a few additional words about the so-called "administrative/production worker dichotomy."

A.
Before 1999, the Labor Code recognized the concept of overtime pay but the Industrial Welfare Commission made policy decisions about the details and expressed those decisions in wage orders. (Lab. Code, §§ 200, 204.2, 1173, 1178, 1178.5.)[1] At that time, Wage Order No. 4 provided as relevant:
"1. Applicability of Order. This Order shall apply to all persons employed in professional, technical, clerical, mechanical, and similar occupations whether paid on a time, piece rate, commission, or other basis, unless such occupation is performed in an industry covered by an industry order of this Commission, except that:
"(A) Provisions of sections 3 through 12 [governing e.g., hours and days of work, minimum wages and rest periods] shall not apply to persons employed in administrative, executive, or professional capacities. No person shall be considered to be employed in an administrative, executive, or professional capacity unless one of the following conditions prevails:
"(1) The employee is engaged in work which is primarily intellectual, managerial, or creative, and which requires exercise of discretion and independent judgment, and for which the remuneration is not less than $1150.00 per month; or
"(2) The employee is licensed or certified by the State of California and is engaged in the practice of [a profession such as law or medicine]." (Emphasis added.)
In 1999, in reaction to wage orders that deprived about eight million workers of their right to overtime pay, the Legislature adopted the Eight-Hour-Day Restoration and Workplace Flexibility Act of *568 1999. (§ 500 et seq.; Stats.1999, ch. 134, § 1(f) (Assem. Bill No. 60).) Under section 510, a California employee is now entitled to overtime pay for work in excess of eight hours in one day or 40 hours in one week unless, as provided in section 515, subdivision (a), he is (1) an executive, administrative, or professional employee who is "primarily engaged in the duties" that meet the test of any exemption adopted by the Commission, (2) "customarily and regularly exercises discretion and independent judgment in performing those duties," and (3) earns a monthly salary at least two times greater than the state minimum wage for full time employees. (Emphasis added; and see § 515, subd. (e), defining "primarily" to mean "more than one-half of the employee's worktime.") Subdivision (a) of section 515 directed the Commission to conduct a review of the duties that meet the test of the exemption and, if necessary, to modify the regulations.

B.
The Commission conducted the required review and ultimately issued Wage Order No. 4-2001 (Cal.Code Regs., tit. 8, § 11040) which, among other things, defines the characteristics of the administrative exemption well beyond the terms of Wage Order No. 4. As relevant, Wage Order No. 4-2001 provides:
"1. Applicability of Order. This order shall apply to all persons employed in professional, technical, clerical, mechanical, and similar occupations whether paid on a time, piece rate, commission, or other basis, except that:
"(A) The provisions of sections 3 through 12 [governing e.g., hours and days of work, minimum wages and rest periods] shall not apply to persons employed in administrative, executive, or professional capacities. The following requirements shall apply in determining whether an employee's duties meet the test to qualify for an exemption from those sections:
"(1) Executive Exemption ....

"(2) Administrative Exemption. A person employed in an administrative capacity means any employee:
"(a) Whose duties and responsibilities involve either:
"(I) The performance of office or non-manual work directly related to management policies or general business operations of his/her employer or his/her employer's customers; or
"(II) The performance of functions in the administration of a school system ... and
"(b) Who customarily and regularly exercises discretion and independent judgment; and

"(c) Who regularly and directly assists a proprietor, or an employee employed in a bona fide executive or administrative capacity (as such terms are defined for purposes of this section); or
"(d) Who performs under only general supervision work along specialized or technical lines requiring special training, experience, or knowledge; or

"(e) Who executes under only general supervision special assignments and tasks; and

"(f) Who is primarily engaged in duties that meet the test of the exemption. The activities constituting exempt work and non-exempt work shall be construed in the same manner as such terms are construed in the following regulations under the Fair Labor Standards Act effective as of the date of this order: 29 *569 C.F.R. Sections 541.201-205, 541.207-208, 541.210, and 541.215. Exempt work shall include, for example, all work that is directly and closely related to exempt work and work which is properly viewed as a means for carrying out exempt functions. The work actually performed by the employee during the course of the workweek must, first and foremost, be examined and the amount of time the employee spends on such work, together with the employer's realistic expectations and the realistic requirements of the job, shall be considered in determining whether the employee satisfies this requirement.
"(g) Such employee must also earn a monthly salary equivalent to no less than two ... times the state minimum wage for full-time employment...." (Cal.Code Regs., tit. 8, § 11040; emphasis added.)
Reduced to the parts relevant to this case, Wage Order No. 4-2001 provides an administrative exemption for employees (1) whose duties and responsibilities involve the "performance of office or non-manual work directly related to management policies or general business operations," and (2) who "exercise[ ] discretion and independent judgment" and (3) "regularly and directly assist[ ] a proprietor, or an employee employed in a bona fide executive or administrative capacity." (Emphasis added.) To narrow the issue still further, the only question at this time is whether the claims adjusters' work is "directly related to management policies or general business operations"which we must answer based upon "the following regulations under the Fair Labor Standards Act effective as of the date of [Wage Order No. 4-2001]: 29 C.F.R. Sections 541.201-205, 541.207-208, 541.210, and 541.215."[2]

C.
One of the federal regulations incorporated into Wage Order No. 4-2001 is particularly relevant to the issue before us. 29 C.F.R. § 541.205 tells us that a claims adjuster's work is "directly related to management policies or general business operations."
"(a) The phrase `directly related to management policies or general business operations of his employer or his employer's customers' describes those types of activities relating to the administrative operations of a business as distinguished from `production' or, in a retail or service establishment, `sales' work. In addition to describing the types of activities, the phrase limits the exemption to persons who perform work of substantial importance to the management or operation of the business of his employer or his employer's customers.
"(b) The administrative operations of the business include the work performed by so-called white-collar employees engaged in `servicing' a business as, for example, advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control. An employee performing such work is engaged in activities relating to the administrative operations of the business notwithstanding that he is employed as an administrative assistant to an executive in the production department of the business. *570 "(c) As used to describe work of substantial importance to the management or operation of the business, the phrase 'directly related to management policies or general business operations' is not limited to persons who participate in the formulation of management policies or in the operation of the business as a whole. Employees whose work is 'directly related' to management policies or to general business operations include those whose work affects policy or whose responsibility it is to execute or carry it out. The phrase also includes a wide variety of persons who either carry out major assignments in conducting, the operations of the business, or whose work affects business operations to a substantial degree, even though their assignments are tasks related to the operation of a particular segment of the business.
"(1) It is not possible to lay down specific rules that will indicate the precise point at which work becomes of substantial importance to the management or operation of a business. It should be clear that the cashier of a bank performs work at a responsible level and may therefore be said to be performing work directly related to management policies or general business operations. On the other hand, the bank teller does not. Likewise it is clear that bookkeepers, secretaries, and clerks of various kinds hold the run-of-the-mill positions in any ordinary business and are not performing work directly related to management policies or general business operations. On the other hand, a tax consultant employed either by an individual company or by a firm of consultants is ordinarily doing work of substantial importance to the management or operation of a business.
"(2) An employee performing routine clerical duties obviously is not performing work of substantial importance to the management or operation of the business even though he may exercise some measure of discretion and judgment as to the manner in which he performs his clerical tasks....
"(3) Some firms employ persons whom they describe as `statisticians.' If all such a person does, in effect, is to tabulate data, he is clearly not exempt. However, if such an employee makes analyses of data and draws conclusions which are important to the determination of, or which, in fact, determine financial, merchandising, or other policy, clearly he is doing work directly related to management policies or general business operations....
"(4) Another example of an employee whose work may be important to the welfare of the business is a buyer of a particular article or equipment in an industrial plant or personnel commonly called assistant buyers in retail or service establishments....
"(5) The test of `directly related to management policies or general business operations' is also met by many persons employed as advisory specialists and consultants of various kinds, credit managers, safety directors, claim agents and adjusters, wage-rate analysts, tax experts, account executives of advertising agencies, customers' brokers in stock exchange firms, promotion men, and many others.
"(6) It should be noted in this connection that an employer's volume of activities may make it necessary to employ a number of employees in some of these categories. The fact *571 that there are a number of other employees of the same employer carrying out assignments of the same relative importance or performing identical work does not affect the determination of whether they meet this test so long as the work of each such employee is of substantial importance to the management or operation of the business. [¶] ... ¶...." (Emphasis added.)[3]

D.
Before Wage Order No. 4-2001 was adopted, Bell v. Farmers Ins. Exchange (2001) 87 Cal.App.4th 805, 105 Cal.Rptr.2d 59 (Bell II) identified an "administrative/production worker dichotomy" arising from a distinction between the criteria addressing the "role of administrative employees" (someone whose work is directly related to management policies or general business operations) and "the actual duties of the employees" (someone whose work requires the exercise of discretion and independent judgment). (Id. at p. 819, 105 Cal.Rptr.2d 59; see also Bell v. Farmers Ins. Exchange (2004) 115 Cal.App.4th 715, 9 Cal.Rptr.3d 544 (Bell III).)
In my view, the analysis articulated in the Bell cases is flawed. The so-called dichotomy is not a legal test but merely an analytical tool used to answer "the ultimate question, whether work is `directly related to management policies or general business operations,' ... not as an end in itself." (Bothell v. Phase Metrics, Inc. (9th Cir.2002) 299 F.3d 1120, 1127.) According to a significant number of courts, the dichotomy is an outmoded form of analysis. (McLaughlin v. Nationwide Mut. Ins. Co. (D.Or., Aug. 18, 2004, Civ. No. 02-6205-TC) 2004 WL 1857112 at p. 5 [refusing to apply this "outdated line of reasoning"]; Blue v. Chubb Group (N.D.Ill., July 13, 2005, No. 03C6692) 2005 WL 1667794 at p. 10; In re Farmers Ins. Exch. Claims Rep. Overtime Pay (D.Or. 2004) 336 F.Supp.2d 1077, 1087 [because the dichotomy suggests a distinction between the administration of a business on the one hand, and the "production" end on the other, courts often strain to fit the operations of modern-day post-industrial service-oriented businesses into the analytical framework formulated in the industrial climate of the late 1940's]; Robinson-Smith v. Government Employees Ins. Co. (D.D.C.2004) 323 F.Supp.2d 12, 22-23, fn. 6 [refusing to analyze the issue "under an outmoded line of reasoning"]; Marting v. Crawford & Co. (N.D.Ill., Mar. 14, 2006, No. 00C7132) 2006 WL 681060 at p. 5).

E.
The majority's analysis is complex. Mine is not.
First, an employee is exempt if he is primarily engaged in administrative duties, a determination that is made by looking at the actual tasks he performs. (§ 515, subd. (e).)
Second, 29 C.F.R. § 541.205(c)(5) expressly states that the test of "directly related to management policies or general business operations" is met by many persons employed as specialists, including "claim agents and adjusters." (Murray v. Ohio Cas. Corp. (S.D.Ohio, Sept. 27, 2005, No. 2:04-CR-539) 2005 WL 2373857, *6 [finding it significant that this section specifically refers to claims agents].)
Third, 29 C.F.R. § 541.205(b) expressly provides that the "administrative operations of the business" include "the work *572 performed by so-called white-collar employees engaged in `servicing' a business as, for example, advising the management, planning, negotiating, [and] representing the company." That is what claims adjusters dothey negotiate settlements (and conclude some without seeking approval), advise management, and process claims.
Fourth, most of the federal courts that have considered the governing federal regulations have held that claims adjusters are exempt. (Miller v. Farmers Ins. Exch. (9th Cir.2006) 2006 U.S.App. LEXIS 26671; Roe-Midgett v. CC Services, Inc. (S.D.Ill., Mar. 29, 2006, No. 04CV4051DRH) 2006 WL 839443 at pp. 13-14; Blue v. Chubb Group, supra, 2005 WL 1667794 at p. 10; McLaughlin v. Nationwide Mut. Ins. Co., supra, 2004 WL 1857112 at p. 5; Cheatham v. Allstate Ins. Co. (5th Cir.2006) 465 F.3d 578, 584-586; Marting v. Crawford & Co., supra, 2006 WL 681060 at p. 6; In re Farmers Ins. Exch. Claims Rep. Overtime Pay, supra, 336 F.Supp.2d at p. 1089; Fichtner v. American Family Mut. Ins. Co. (D.Or., Mar. 1, 2004, No. 02-6284-HO) 2004 WL 3106753 at p. 3; Jastremski v. Safeco Ins. Companies (N.D.Ohio 2003) 243 F.Supp.2d 743; Munizza v. State Farm Mut. Auto. Ins. Co. (W.D.Wash., May 12, 1995, No. C945345RJB) 1995 WL 17170492 at p. 5.)
Fifth, any analysis of Wage Order No. 4-2001 must be based on the regulations listed in the wage order: "The activities constituting exempt work and non-exempt work shall be construed in the same manner as such terms are construed in the following regulations under the Fair Labor Standards Act effective as of the date of this order: 29 C.F.R. Sections 541.201-205, 541.207-208, 541.210, and 541.215." (Emphasis added.) Put the other way, the apparent inconsistency created by reference to 29 C.F.R. § 778.405 is irrelevant because that regulation is not mentioned in Wage Order No. 4-2001. (pp. 556, 563 ante.)
I would grant the defendants' petition and deny the plaintiffs' petition.
NOTES
[1] The original order certifying the class and the later order partially decertifying it (and denying summary adjudication) were issued by different judges.
[2] More precisely, the IWC first replaced Wage Order 4 with Wage Order 4-2000, which took effect on October 1, 2000, and then replaced Wage Order 4-2000 with Wage Order 4-2001, which took effect on January 1, 2001. Because there are no relevant differences between Wage Order 4-2000 and Wage Order 4-2001 for our purposes, we will join the parties and the trial court in considering them together.

The current versions of the IWC's wage orders, including Wage Order 4-2001, are found in the California Code of Regulations. Previous versions of the wage orders can be found at the web site of California's Division of Labor Standards Enforcement, >www.dir. ca.gov/dlse/>.
[3] Again, there is no material difference between Wage Order 4-2000 (which incorporated the federal regulations that were in effect on October 1, 2000) and Wage Order 4-2001 (which incorporated the federal regulations that were in effect on January 1, 2001), because the relevant federal regulations did not change between October 1, 2000, and January 1, 2001. (Cf. fn. 2, ante.) Unless otherwise indicated, all subsequent references to federal regulations are to the regulations that were in effect on October 1, 2000, and January 1, 2001.
[4] Both Wage Order 4 and Wage Order 4-2001 define "primarily" to mean "more than one-half the employee's work time." (Cal. Code Regs., tit. 8, § 11040, subd. (2)(N); Wage Order 4, subd. (2)(K).) Thus, in order to be covered by the administrative exemption under either wage order, an employee must spend over half of his or her work time doing work that meets the test of the exemption.
[5] The dichotomy distinguishes between types of work, not types of workersan individual worker might perform different tasks that fall on different sides of the dichotomy. But because the case law generally uses the phrase "administrative/production worker dichotomy," we will adopt that terminology as well.
[6] In Bell II, the court emphasized that the defendant conceded, and the record showed, that the plaintiffs' work was "routine and unimportant." (Bell II, supra, 87 Cal.App.4th at pp. 827-828, 105 Cal.Rptr.2d 59.) Defendants argue that Bell II is consequently distinguishable, because defendants have never conceded that plaintiffs' work is routine and unimportant and have introduced evidence to the contrary. We agree that defendants have introduced substantial evidence that plaintiffs' work is not routine and unimportant, and that Bell II is distinguishable on that ground. But the fact remains that plaintiffs' workinvestigating claims, determining coverage, setting reserves, etc.is not carried on at the level of policy or general operations, so it falls on the production side of the dichotomy. Not all production work is routine or unimportant.
[7] On the other hand, it might not. For example, if a Golden Eagle underwriter consults with a Golden Eagle claims examiner regarding whether the company should issue certain types of policies to a particular customer, the claims examiner is not giving advice about management policies or general operations. But if Golden Eagle's underwriters consult with Golden Eagle's claims examiners regarding whether the company should offer certain types of policies in general (i.e., whether such policies should be included in Golden Eagle's line of products), the claims examiners are giving advice about management policies or general operations.
[8] In this way and others (see footnote 5, ante), the phrase "administrative/production worker dichotomy" is misleading. Properly understood, the dichotomy is not between workers engaged in "production" (e.g., factory workers) and workers engaged in "administration" (e.g., office workers). Rather, it is between office or nonmanual work that is at the level of policy or general operations and office or nonmanual work that is not. Thus, any office or nonmanual work that is not at the level of policy or general operations constitutes production work for purposes of the dichotomy, regardless of how loosely or intimately the work is connected with producing the employer's product,
[9] The federal case law manifests considerable confusion on this issue. On the one hand, in two federal lawsuits brought by claims adjusters employed by companies that provide claims adjusting services to insurance companies, the courts found the plaintiffs were exempt administrative employees under the FLSA but never mentioned the fact that the plaintiffs produced their employers' product, i.e., claims adjusting services. (See Roe-Midgett v. CC Services, Inc. (S.D.Ill. Mar. 29, 2006, No. 04 CV 4051 DRH) 2006 WL 839443; Marting v. Crawford & Co. (N.D.Ill Mar. 14, 2006, No. 00 C 7132) 2006 WL 681060.) On the other hand, in other federal lawsuits brought by claims adjusters employed directly by insurance companies, the courts likewise found the plaintiffs were exempt under the FLSA but based that determination, in part, on the fact that the plaintiffs did not produce their employers' product, i.e., insurance policies. (See, e.g., Cheatham v. Allstate Ins. Co. (5th Cir.2006) 465 F.3d 578, 585; Palacio v. Progressive Ins. Co. (CD.Cal. 2002) 244 F.Supp.2d 1040, 1050; Jastremski v. Safeco Ins. Companies (N.D.Ohio 2003) 243 F.Supp.2d 743. 753.)

The analysis in both sets of cases is misguided. If an employee does not produce the employer's product, it does not follow that the employee is not doing production workproducing the employer's product is not a necessary condition. But producing the employer's product can be a sufficient condition for doing production work, as long as the employer's product is not itself an administrative service (such as management consulting). (See, e.g., Piscione v. Ernst & Young, L.L.P. (7th Cir.1999) 171 F.3d 527, 530-531 [plaintiff administered employee benefit plans for clients of his employer, which provided human resources consulting services; plaintiff was an exempt administrative employee].) Thus, in those cases in which the courts concluded that the plaintiff claims adjusters did not produce their employers' product, that conclusion should have been of no consequence. But in those cases in which the plaintiff claims adjusters did produce their employers' product, that fact should have been dispositive in application of the dichotomy as long as the employer's product was not itself an administrative service.
[10] Because plaintiffs are not primarily engaged in work that falls on the administrative side of the dichotomy, it is unnecessary for us to analyze the other elements of the administrative exemption, including the substantial importance requirement and the requirement that the employee exercise discretion and independent judgment.
[11] For similar reasons, we are not persuaded by the DOL opinion letters from 1985, 1963, and 1957 that were cited by the Ninth Circuit Court of Appeals in In re Farmers Insurance Exchange (9th Cir.2007) 481 F.3d 1119, 1128-1129. None of those letters mentions the administrative/production worker dichotomy. In each of them, the analysis of the "directly related" requirement consists of a single sentence, which asserts that the requirement is met because of the reference to "claim agents and adjusters" in 29 C.F.R. § 541.205(c)(5). (The 1985 opinion letter actually cites "29 C.F.R. § 541.205(a)(5)," but that must be a typographical error, because 29 C.F.R. § 541.205(a) consists of a single paragraph and has no subsections.)

The remainder of In re Farmers Insurance Exchange is not relevant to our analysis, because it is based on a new version of the federal regulations, promulgated in 2004. (In re Farmers Insurance Exchange, supra, 481 F.3d at pp. 1127-1128.) The current version of the federal regulatory definition of the administrative exemption retains the "directly related" requirement in slightly modified form (29 C.F.R. § 541.200 (2006)), but the regulatory interpretation of that requirement has been drastically shortened and substantively altered (29 C.F.R. § 541.201 (2006)). Also, a new regulation listing examples of administrative employees states that "[i]nsurance claims adjusters generally meet the duties requirements for the administrative exemption" as long as they perform certain specified tasks. (29 C.F.R. § 541.203(a) (2006).)
[12] Nor are we persuaded by the argument that courts should not "strain[] to fit the operations of modern-day post-industrial service-oriented businesses into an analytical framework formulated in the industrial climate of the late 1940s." (In re Farmers Ins. Exch. Claims Rep. Overtime Pay, supra, 336 F.Supp.2d at p. 1087.) First, application of the dichotomy in this case does not require us to fit a new twenty-first century business enterprise into a 1940s paradigm, because insurance companies and their claims adjusters existed when the federal regulations were promulgated in the 1940s. Indeed, defendants implicitly concede the point by arguing that 29 C.F.R. § 541.205(c)(5) expressly refers to insurance company claims adjusters. Second, the dichotomy has never been based on the distinction between blue-collar industrial workers and white-collar office workers. Rather, from its original promulgation in the 1940s, the sole purpose of the dichotomy has always been to distinguish between types of white-collar (i.e., office or nonmanual) work. (See footnote 8, ante, and accompanying text.) Third, as we have already explained, even if we were convinced that the dichotomy formulated in the 1940s (when office and nonmanual work already existed) would be difficult to apply in the twenty-first century (when office and nonmanual work still exist), we would still not be free to disregard it. The "directly related" requirement is an element of the administrative exemption. The administrative/production worker dichotomy is a component of the "directly related" requirement. It is the function of the Legislature and the relevant agencies, not of the courts, to determine whether the "directly related" requirement or any of its components have become obsolete, and to modify them as necessary.
[1] Subsequent undesignated section references are to the Labor Code.
[2] Subsequent references to the 29 C.F.R. sections are to the versions relevant to the time periods at issue in this case.
[3] An employee qualifies for an exemption "regardless of whether the management policies or general business operations to which [his] work is directly related are those of [his] employer's clients or customers or those of [his] employer." (29 C.F.R. § 541.205(d).)