103 F.3d 139
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Steven MUNIZZA, Plaintiff-Appellant,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois
corporation, Defendant-Appellee.
 No. 95-35794.
 United States Court of Appeals, Ninth Circuit.
 Submitted Nov. 7, 1996.*
Decided Dec. 05, 1996.
 
 1
 Before: BRUNETTI and O'SCANNLAIN, Circuit Judges, and WILLIAMS,** District Judge.
 
 
 2
 MEMORANDUM***
 
 
 3
 Appellant Steven Munizza appeals the district court's grant of summary judgment in favor of his former employer, State Farm Mutual Automobile Insurance Company ("State Farm"), in Munizza's action contending that he was terminated from his position as a claims adjuster in retaliation for taking family leave to care for his new baby. Munizza claims that his termination was in violation of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, the Washington Family Leave Act ("WFLA"), RCW 49.78, and the implied contract between State Farm and its employees. Munizza also appeals the district court's dismissal of his claim that he was entitled to overtime pay under the Fair Labor Standards Act, 29 U.S.C. § 213, and the state law equivalent, RCW 49.46.
 
 
 4
 The district court had jurisdiction pursuant to 28 U.S.C. § 1332. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291. We review the district court's grant of summary judgment de novo. Bagdadi v. Nazar, 84 F.3d 1194, 1997 (9th Cir.1994).
 
 I. FACTS
 
 5
 Until September 23, 1993, State Farm employed Steven Munizza as a claims adjuster, an individual responsible for negotiating and settling claims. In November 1987, Munizza began working for State Farm as a claims representative trainee in State Farms' Bodily Injury ("BI") Unit. On April 2, 1988, Munizza was promoted to the position of Claims Representative. On November 11, 1989, Munizza was promoted to Senior Claims Representative. By Munizza's own admission, he began to fall behind in his work in the Summer of 1991. Thereafter, the record indicates that Munizza's work became progressively problematic. Munizza was late reporting on files, failed to take action in handling other files, did not complete reports, and committed a substantial number of "80 errors."[1]
 
 
 6
 Despite these problems, Munizza was once again promoted on December 7, 1991 to the position of Claim Specialist. Munizza testified that he knew that concomitant with his promotion State Farm would expect a higher quality of performance from him. On March 4, 1992, Munizza's supervisor documented a number of errors committed by Munizza in a memorandum. The memorandum identified sixteen instances over 45 days where Munizza made coverage errors. Munizza did not disagree with the memorandum's characterization of his performance and admitted that he made more "80 errors" than any other adjuster during his employment at State Farm.
 
 
 7
 On April 6, 1992, Munizza received a negative performance evaluation from his supervisor, stating: "Unfortunately, Steve's performance in the BI Department has continued to decline since his promotion to Claim Specialist. This was very alarming and we discussed his performance. He felt that he was overwhelmed, but would work hard to return to his previous high quality work. The problems continued with late reporting, inactivity in file handling, incomplete reporting, and general disorganization." At his request, Munizza was transferred from the BI Unit to the Property Damage ("PD") Unit. He admits that he promised State Farm supervisors that his performance would improve when he was transferred to the PD Unit.
 
 
 8
 Within his first few months in the PD Unit, Munizza's supervisor observed errors and became critical of Munizza's job performance. Munizza's supervisor counseled him in several areas; expressing concern about Munizza's untimely reporting in files, lateness in responding to supervisors' questions, inability to recognize coverage issues, lack of job knowledge, and the quality and quantity of his work product. These problems were referenced to Munizza in a memorandum from the supervisor dated September 29, 1992. Munizza admits that these performance deficiencies were discussed with him on repeated occasions before the memorandum of September 29, 1992.
 
 
 9
 In October 1992, Munizza sought information about State Farm's family leave program. State Farm's written parental leave policy allowed employees to take up to sixty days leave following the birth or adoption of a child. State Farm approved Munizza's family leave within a few days after his request. On March 17, 1993, Munizza took family leave. Supervisors and coworkers who worked on Munizza's files during his absence testified that they discovered numerous errors in those files. Given the nature and extent of Munizza's prior documented problems in both the BI and PD Units and the scope of errors found in Munizza's files while he was on leave, State Farm management decided to place Munizza on probation upon his return from family leave. Accordingly, Munizza received a probation memorandum setting forth his probation status and a "Work Product Concerns" memorandum documenting numerous errors discovered in his files when he returned from leave on June 4, 1993. Munizza inspected the files described in the probation memorandum and the Work Product Concerns attachment to determine whether the criticisms were correct. With the exception of two or three items, Munizza did not contest approximately 126 files identified where he made errors.
 
 
 10
 Around September 13, 1993, Munizza and a supervisor reviewed approximately fifty of Munizza's files. At that time, the supervisor advised Munizza that his probation period was coming to a close and his work product was still not at the level expected of a Claim Specialist. After three months of probation, Munizza's performance had apparently failed to improve. Based upon this fact, State Farm decided to terminate Munizza's employment. On September 23, 1993, Munizza received a memorandum notifying him of State Farm's decision to terminate his employment which included a list of Munizza's files that still exhibited significant errors. The memorandum discussed Munizza's job deficiencies in detail.
 
 
 11
 While employed at State Farm, Munizza neither received nor requested compensation for "overtime." State Farm classified Munizza's job ("Claim Specialist") as exempt from overtime compensation under the Fair Labor Standards Act. 29 C.F.R. 541.205(c)(5). Munizza's job duties included the exercise of discretion and independent judgment in performing office or nonmanual work directly related to State Farm's general business operations. Claim Specialists negotiate settlements, interview and recommend legal counsel, collaborate with attorneys in preparing for litigation, and train other employees.
 
 
 12
 Munizza appeals the district court's summary judgment on his claim that he was terminated in retaliation for taking family leave in violation of the FMLA, WFLA and an implied contract between Munizza and State Farm.[2] As evidence that he was terminated in retaliation for taking family leave, Munizza points to the fact that: (1) he was placed on probation on the day he returned from family leave, and (2) a supervisor referred to his family leave as "babybonding."[3] Further, Munizza appeals the district court's dismissal of his claim for recovery of overtime compensation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and RCW 49.46.
 
 II. ANALYSIS
 A. Retaliatory Discharge Claims
 
 13
 Munizza alleges that he was discharged in retaliation for his exercise of his right to take family leave under the FMLA, the WFLA and the contract he alleges was implied between he and State Farm. Assuming, without deciding, that a claim for retaliatory discharge may lie under the FMLA and the WFLA and that an implied contract in fact existed between Munizza and State Farm, Munizza failed to submit any evidence that State Farm's legitimate, nondiscriminatory reason for terminating Munizza was a pretext.[4]
 
 
 14
 Munizza's claim that he was terminated in retaliation for the exercise of his right to take family leave is a claim of employment discrimination. Accordingly, the burden-shifting analysis of McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973), that applies generally to discrimination claims under Washington's Law Against Discrimination (RCW 49.60), Title VII and other federal employment discrimination claims applies to this case.[5]
 
 
 15
 Munizza clearly satisfies the first two elements of the prima facie case for retaliatory discharge because he took family leave and was terminated from his employment. Because we must grant all inferences in the nonmoving party's favor on summary judgment, the temporal connection between Munizza's exercise of his right to family leave and his termination and the use of the term "babybonding" in a note from a supervisor to Munizza gives rise to an inference of unlawful retaliation sufficient to establish a causal connection between his discharge and his exercise of his right to family leave.[6] Munizza has established a prima facie case of retaliatory discharge.
 
 
 16
 After the plaintiff in an retaliatory discharge case establishes a prima facie case of retaliatory discharge, "the burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's [termination]." McDonnell-Douglas, 411 U.S. at 802. State Farm submitted ample evidence that Munizza's poor performance was the reason for his termination. In fact, most of that evidence was corroborated by Munizza himself.
 
 
 17
 Once the employer offers a legitimate reason for his discharge, the employee must offer evidence that shows that the employer's articulated reason for his termination was pretextual. Wallis v. J.R. Simplot Co., 26 F.3d 885, 890 (9th Cir.1994). Munizza failed to submit any evidence that State farm's well-justified and documented employment decision was a mere pretext for retaliation against Munizza for exercising his right to take family leave. Munizza failed to produce any evidence that State Farm lied or that its explanation for its employment decision was "unworthy of credence." Wallis, 26 F.3d at 890; Parsons v. St. Joseph's Hospital & Health Care Center, 856 P.2d 702, 704-05 (Wash.Ct.App.1993). In fact, Munizza agreed with the majority of State Farm's criticisms. Summary judgment was proper on Munizza's claims of retaliatory discharge in violation of the FMLA, the WFLA and the implied contract between Munizza and State Farm and the district court did not err.
 
 B. Fair Labor Standards Act Claim
 
 18
 Munizza argues that the district court erred in granting summary judgment to State Farm on Munizza's claim for overtime compensation under the Fair Labor Standards Act ("FLSA") and RCW 49.46. Both the FLSA and RCW 49.46 impose overtime compensation requirements upon employers with regard to certain classes of employees. However, both the FLSA and RCW 49.46 exempt from those requirements certain individuals who are "employed in a bona fide executive, administrative or professional capacity." 29 U.S.C. § 213(a)(1); RCW 49.46.010(5)(c).[7]
 
 
 19
 An employee employed in a bona fide administrative capacity means any employee:
 
 
 20
 (a) whose primary duty consists of ...
 
 
 21
 (1) the performance of office or nonmanual work directly related to management policies or general business operations of his employer or his employer's customers, ... and
 
 
 22
 (b) Who customarily and regularly exercises discretion and independent judgment; and
 
 
 23
 (c) (1) Who regularly and directly assists a proprietor, or an employee employed in a bona fide executive administrative capacity ..., or
 
 
 24
 (2) Who performs under only general supervision work along specialized or technical lines requiring special training, experience, or knowledge, or
 
 
 25
 (3) Who executes under only general supervision special assignments and tasks; and
 
 
 26
 (d) Who does not devote more than 20 percent ... of his hours worked in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (a) through (c) of this section; and
 
 
 27
 (e)(1) Who is compensated for his services on a salary or fee basis at a rate of not less than $155 per week....
 
 29 C.F.R. 541.2.[8]
 
 28
 29 C.F.R. 541.205(c)(5) specifically identifies an "insurance claims adjuster" as an example of an exempt administrative employee. There can be no real question that the activities performed by Munizza in his position as Claim Specialist clearly fit within the applicable standards that define an exempt employee's responsibilities. 29 C.F.R. 541.205(b). Summary judgment on this claim was therefore proper.
 
 
 29
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); Ninth Circuit Rule 34-4
 
 
 **
 Hon. Spencer M. Williams, Senior United States District Judge for the Northern District of California, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 "80 errors" constitute erroneous entries of payments or loss codings in a file which can result in losses incorrectly charged to policyholders or fault incorrectly ascribed to policyholders, which in turn, may result in the policyholder suffering an unwarranted increase in premium or an improper cancellation of coverage
 
 
 [2]
 Munizza claims that, through its parental leave policy, State Farm impliedly contracted that it would not retaliate against employees for taking parental leave
 
 
 [3]
 A note sent by a supervisor to Munizza stated in full: "Steve, your willingness to interrupt your babybonding, and come in on at least Monday is likewise commendable. Have Jeff invite you along on the lunch deal."
 
 
 [4]
 The district court granted State Farm's motion for summary judgment on Munizza's FMLA retaliatory discharge on the ground that such a cause of action was not provided for in the statute. We need not address the issue of whether a cause of action for discharge in retaliation for the exercise of the right to family leave may be implied in the FMLA in this case. Assuming, without deciding, that such a cause of action may be implied under the FMLA, Munizza fails to state a prima facie case
 
 
 [5]
 Washington courts have adopted the same allocation of burdens of persuasion in common law termination of employment claims as those applicable in statutory employment discrimination claims. Therefore, the McDonnell-Douglas three-step burden-shifting analysis discussed above applies to Munizza's claim for breach of implied contract. Baldwin v. Sisters of Providence in Washington, Inc., 769 P.2d 298, 302-03 (Wash.1989) (en banc )
 
 
 [6]
 However, we note that under Washington law, Munizza must submit evidence that retaliation for taking family leave was a "substantial factor" behind State Farm's decision to place him on probation and terminate his employment in order to establish the third element of a prima facie case. Allison v. Housing Authority of Seattle, 821 P.2d 34, 42 (Wash.1991). The issue is not determinative because Munizza fails to rebut State Farm's legitimate justification for his termination with evidence that the proffered justification was mere pretext
 
 
 [7]
 The Washington regulations mirror the identical federal regulations defining administrative employees exempt from the FLSA overtime provisions. Compare 29 C.F.R. § 541.2 with WAC 296-128-520
 
 
 [8]
 The federal regulations further clarify the administrative operations of a business, stating:
 the administrative operations of the business include work performed by so-called white-collar employees engaged in "servicing" a business as, for example, advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control.
 
 
 [29]
 C.F.R. § 541.205(b). Federal courts apply the "Short Test" to administrative employees in order to evaluate the degree of discretion and independent judgment an employee must exercise to fall within the administrative employee exemption from the overtime provisions of the FLSA. 29 C.F.R. 541.205(b). Under the "Short Test," the job need only "include" work requiring the exercise of discretion and independent judgment to qualify the employee as exempt. 29 C.F.R. § 541.214; Odell v. Alaska Pipeline Serv. Co., 856 F.2d 1452, 1454 (9th Cir.1988)